NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-427

STATE IN THE INTEREST OF M. D. L.

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. J-2741-2022B
HONORABLE C. ANTHONY EAVES, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and Charles G. Fitzgerald, Judges.

AFFIRMED.

Annette Fuller Roach
Roach & Roach, APLC
2740 Rue de Jardin, Suite 400
Lake Charles, LA 70605
(337) 436-2900
COUNSEL FOR APPELLANT:
    I.G.E.L. (mother)

Ruby Norris Freeman
Louisiana Department of Children and Family Services
900 Murray St.
Alexandria, LA 71301
(318) 487-5218
COUNSEL FOR APPELLEE:
    State of Louisiana

**PICKETT, Judge.**

I.G.E.L.[1] appeals the judgment of the trial court terminating her parental rights to her son, M.D.L.

## FACTS

M.D.L. was born on March 7, 2018. M.D.L.'s mother, I.G.E.L., and father, J.D.L., both were incarcerated, and the child was left in the care of his grandparents. On September 10, 2021, M.D.L. was taken into the custody of the state pursuant to an instanter order after his grandparents indicated they were no longer able to care for him. M.D.L. was adjudicated a child in need of care on December 8, 2021, and has continued in the custody of the state since that time.

On August 26, 2022, the state filed a petition to terminate the parental rights of J.D.L. and I.G.E.L., alleging failure to comply with their case plans, failure to provide significant contributions and support for a period of six months pursuant to La.Ch.Code art. 1015(5)(b) and failure to visit or communicate with the child for six months pursuant to La.Ch.Code art. 1015(5)(c).[2] The petition further alleged that it was in the best interests of M.D.L. that both parents' rights be terminated and M.D.L. be freed for adoption. The petition further sought leave of court to file the petition even though it had been less than one year since M.D.L. entered state custody.

Originally, the hearing to determine whether parental rights should be terminated was set for November 9, 2022. The hearing was continued on the

---

[1] The parties and the minor child are referred to by their initials to preserve their anonymity in this confidential proceeding.

[2] The petition incorrectly cited La.Ch.Code art. 1015(4)(b) and (c). Louisiana Children's Code article 1015 was amended by the legislature in 2023 to delete sections 3 and 9. 2023 La.Acts 271, § 1. The remaining sections were renumbered, but no change was made to those sections. We refer to the sections as they were numbered at the time of the trial of this matter.

motion of the state because the attorney for the state had a broken ankle and her colleague had a medical procedure on that date. The hearing was reset for March 28, 2023.

On the day of the trial, I.G.E.L.'s attorney moved to continue the hearing. She argued that her client had been incarcerated for the last seven months, but that she had a court date in her criminal proceedings scheduled for April 5, 2023. I.G.E.L.'s attorney indicated that she may be released from prison at that time and be able to begin working her case plan. The state objected to the continuance. The trial court denied the motion for continuance, and the matter proceeded to trial.

The state called two witnesses: Valerie Lopez, the Department of Children and Family Services (DCFS) case worker assigned to this case from the time M.D.L. entered state custody until October 2022, and Serenity Horsley, the DCFS case worker assigned from October 2022 until the date of trial. The entire record from the child in need of care proceeding was introduced as evidence. At the conclusion of the hearing, the trial court found the state proved by clear and convincing evidence grounds for termination of the parental rights of J.D.L. and I.G.E.L. The trial court further found that termination of parental rights was in the best interests of M.D.L.

On April 19, 2023, the trial court signed a judgment terminating the parental rights of I.G.E.L. and J.D.L. in conformity with its oral reasons. I.G.E.L. timely perfected this appeal. J.D.L. has not appealed the judgment, and the termination of his parental rights is not before this court for review.

## ASSIGNMENT OF ERROR

On appeal, I.G.E.L. assigns five errors:

1. The court manifestly erred when it denied I.G.E.L.'s motion for continuance which was sought to allow I.G.E.L. an opportunity to resolve her legal issues and current incarceration.

2

2. The court manifestly erred in terminating the parental rights of I.G.E.L. because the agency failed to show by clear and convincing evidence that I.G.E.L. abandoned M.D.L. by failing to provide a significant contribution toward the child's care.

3. The court manifestly erred in terminating the parental rights of I.G.E.L. because the agency failed to show by clear and convincing evidence that I.G.E.L. abandoned M.D.L. by leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility.

4. The court manifestly erred in terminating the parental rights of I.G.E.L. because the agency failed to show by clear and convincing evidence that I.G.E.L. failed to comply with her case plan.

5. The court manifestly erred by finding that the state proved by clear and convincing evidence that termination of I.G.E.L.'s parental rights was in the best interests of M.D.L.

## DISCUSSION

In her first assignment of error, I.G.E.L. argues that the trial court erred in refusing to grant her motion to continue on the day of the hearing.

"[A] continuance may be granted in any case there is good ground therefor." La.Code Civ.P. art. 1601. The trial court has great discretion in granting or denying a motion for a continuance, and denial of a continuance will not be disturbed on appeal, unless the trial court is shown to have abused its discretion. *Jackson v. Royal Ins. Co.*, 97-723 (La.App. 3 Cir. 12/17/97), 704 So.2d 424. Whether a trial court should grant or deny a continuance depends on the particular facts of each case.

Some factors to consider in denying or granting a continuance are diligence, good faith, and reasonable grounds. *Demopulos v. Jackson*, 33,560 (La.App. 2 Cir. 6/21/00), 765 So.2d 480. Fairness to both parties and the need for orderly administration of justice are additional considerations in deciding whether to grant or deny a continuance. *Gilcrease v. Bacarisse*, 26,318 (La.App. 2 Cir. 12/7/94), 647 So.2d 1219, *writ denied*, 95-421 (La.3/30/95), 651 So.2d 845.

*Walsh v. Morris*, 07-579, pp. 4-5 (La.App. 3 Cir. 10/31/07), 970 So.2d 94, 96-97, *writ denied*, 09-478 (La. 4/17/09), 6 So.3d 795.

I.G.E.L. argues that the trial court should have continued the hearing for a week for her to resolve the charges for which she was incarcerated. I.G.E.L.

3

claims it appeared the charges would be resolved favorably and would allow her to be released and work her case plan. The state points out that the continuance was not sought until the morning of trial, and no evidence was introduced to support the claims that her criminal charges would be favorably resolved. Further, the original hearing was set for November, so I.G.E.L. had four months to resolve her criminal charges.

We find the trial court did not abuse its discretion in determining that the termination of parental rights hearing should not be continued.

The supreme court discussed the law applicable to an action by the state to terminate parental rights in *State ex rel. A.T.*, 06-501, p. 5 (La. 7/6/06), 936 So.2d 79, 82:

> Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. Permanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the State can take against its citizens. However, the primary concern of the courts and the State remains to determine and insure the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist and are proven by the State. *State ex rel. S.M.W.*, 00-3277 (La.2/21/01), 781 So.2d 1223.
>
> . . . .
>
> In order to terminate parental rights, the court must find that the State has established at least one of the statutory grounds by clear and convincing evidence. *State ex rel. J.A.*, 99-2905 (La.1/12/00), 752 So.2d 806, 811 (citing La. Ch. C. Art. 1035(A); *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Further, even upon finding that the State has met its evidentiary burden, a court still must not terminate parental rights unless it determines that to do so is in the child's best interests. La. Ch. C. Art. 1039; *State ex rel. G.J.L.*, 00-3278 (La.6/29/01), 791 So.2d 80, 85.

On review, this court will not overturn the findings of fact of the trial court in a termination proceeding unless the trial court committed manifest error or is clearly wrong. *In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47.

In her second assignment of error, I.G.E.L. alleges that the trial court erred in finding that the state proved by clear and convincing evidence that she abandoned her child by failing to provide a significant contribution toward the child's care. Louisiana Children's Code Article 1015(5)(b) states:

The grounds for termination of parental rights are:

(5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

. . . .

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

As we have discussed, I.G.E.L. was in jail at the time M.D.L. entered state custody in September 2021. She was released from jail in October 2021. Ms. Lopez testified that I.G.E.L. never paid any contributions to M.D.L.'s care, even during the eleven months she was not in prison. The first case plan approved by the court on an unknown date in 2021 ("the 27th day of 2021"), stated that I.G.E.L. would contribute $25 per month towards M.D.L.'s care if she was employed and $10 per month if she was not employed. At the latest, I.G.E.L. knew about this requirement of her case plan by February 18, 2022, when she participated in the family conference via Zoom. The case plan approved by the court on March 9, 2022, included the same requirement for support. Ms. Lopez testified that I.G.E.L. provided information about a job as a sitter, but Ms. Lopez was unable to verify the employment. Even if she was not employed, she failed to provide even the $10 per month for care and support from February 18, 2022, the latest date at which she

5

would have been made aware of her obligation to provide support until August 26, 2022, when the petition for termination was filed.

We find no manifest error in the trial court's factual finding that the state proved by clear and convincing evidence that I.G.E.L. failed to provide any contribution to M.D.L.'s support for a period of six months.

I.G.E.L. argues in her third assignment of error that the trial court erred by finding that the state proved by clear and convincing evidence that I.G.E.L. abandoned M.D.L. In this assignment of error, I.G.E.L. claims she is the "non-offending" parent, in that she was already in prison when her husband left M.D.L. with his parents, who then turned custody over to the state when they could no longer care for him. Ms. Lopez testified that I.G.E.L. provided information about a relative for placement, but Ms. Lopez was unable to contact that relative.

I.G.E.L. also argues that the trial court erred in finding that she failed to visit M.D.L. for a period of six months, a ground for termination found at La.Ch.Code art. 1015(5)(c), which states:

The grounds for termination of parental rights are:

(5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

. . . .

(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

The evidence presented at trial and in the exhibits presented in the form of case progress documentation shows that I.G.E.L. did visit M.D.L. when she was not in prison or in in-patient treatment. The state did not prove that, at the time the petition was filed, I.G.E.L. did not visit or communicate with M.D.L. for a period

6

of six months. Nevertheless, as we have found that the state did prove a statutory ground for termination in the discussion of the previous assignment of error, our conclusion that this assignment of error is well-founded does not necessitate a reversal of the judgment of the trial court.

In her fourth assignment of error, I.G.E.L. argues that the state failed to prove by clear and convincing evidence that she failed to work her case plan. I.G.E.L. continued to test positive for illegal drugs or fail to show up for testing. I.G.E.L. did not receive counseling for her mental health issues. She entered two different drug treatment programs but completed neither. I.G.E.L. did not complete parenting classes. Ms. Lopez was unable to verify I.G.E.L.'s employment. I.G.E.L. did not provide any financial support for the care of M.D.L. Finally, I.G.E.L. did not resolve her legal issues. All of these were components of the case plan. I.G.E.L. did attend visitation sporadically. I.G.E.L. also had housing for the period that she was not in treatment or incarcerated.

We find the evidence presented at trial supports the trial court's finding that I.G.E.L. failed to work her case plan as required by La.Ch.Code art. 1015(5), which states as a ground for termination of parental rights:

> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

We note that the state sought, and the trial court granted, leave for the petition for termination of parental rights to be filed sooner than a year after the child entered the state's custody. We also find that the trial court's conclusion that there is no

reasonable expectation of significant improvement was not manifestly erroneous, especially given that I.G.E.L. was incarcerated at the time of the trial of this matter.

We find no merit in this assignment of error.

Finally, I.G.E.L. argues that the trial court erred in finding that termination of parental rights was in the best interests of M.D.L. The state introduced evidence that M.D.L. is in the care of foster parents who are willing to adopt him. He is healthy and well cared for in the home. We find the evidence clearly and convincingly supports the trial court's finding that termination of I.G.E.L.'s parental rights is in the best interest of M.D.L. This assignment of error lacks merit.

## CONCLUSION

The judgment of the trial court is affirmed.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.

8